UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHAMROCK FLOORCOVERING
SERVICES, INC.,                                    Case No. 07-13712

    Appellant,                          Honorable Nancy G. Edmunds

v.

SAMEER B. PATEL,

    Appellee.
                                        /


**OPINION AND ORDER (1) REVERSING BANKRUPTCY JUDGE'S MAY 24, 2007 ORDER GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S § 523(a)(4) CLAIM; AND (2) AFFIRMING THE BANKRUPTCY JUDGE'S AUGUST 22, 2007 ORDER GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON APPELLANT'S § 523(a)(2) CLAIM**


      This is an appeal from two orders issued by the Bankruptcy Court in an adversary proceeding brought by Appellant Shamrock Floorcovering Services, Inc. ("Shamrock") seeking a determination that the debt owed to it by Appellee Sameer Patel ("Patel") was not dischargeable in Patel's Chapter 7 bankruptcy proceeding. On May 24, 2007, the Bankruptcy Court held that the debt was dischargeable under 11 U.S.C. § 523(a)(4) because Shamrock had not presented any evidence that would allow the Court to pierce the corporate veil of the corporation that did business with Shamrock so as to hold Patel individually liable under the Michigan Builders Trust Fund Act ("MBTFA"), Mich. Comp. Laws § 570.151, *et seq.* On August 22, 2007, the Bankruptcy Court held that the debt was dischargeable under § 523(a)(2)(A) of the Bankruptcy Code because Shamrock had not

presented any evidence showing that, when Patel made material misrepresentations to Shamrock regarding its debt, he knew them to be false or made them with gross recklessness as to their truth. It further held that Shamrock could not invoke the doctrine of collateral estoppel to establish fraud and thus have the Bankruptcy Court find its debt nondischargeable under § 523(a)(2)(A).

For the reasons stated below, this Court REVERSES the Bankruptcy Court's May 24, 2007 Order granting Patel's motion for summary judgment on Shamrock's § 523(a)(4) claim; and (2) AFFIRMS the Bankruptcy Court's August 22, 2007 Order granting Patel's motion for summary judgment on Shamrock's § 523(a)(2) claim.

**I.      Jurisdiction**

Appellate jurisdiction is conferred on this Court by 11 U.S.C. § 158(a)(1) which states, "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, decrees; of bankruptcy judges under Section 157 of this title. An Appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**II.     Appellate Standard of Review**

This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. *Westbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997).

**III.    Facts**

This matter arises out of a construction project in Pittsfield Township, Michigan. Patel was the President and a 50% shareholder of Empire Builders of Michigan, Inc. ("Empire Builders"), the general contractor overseeing a multi-phase new home construction project in the Silverleaf subdivision during 1998 and 1999. It is undisputed that Appellant Shamrock provided labor and flooring materials to Empire Builders on this project in 1998 and 1999, and that some of its invoices were not paid. (Patel 3/2/07 Aff. ¶¶ 7, 13.) It is also undisputed that Patel was the sole individual in charge of day-to-day operations for Empire Builders at the Silverleaf project and was the sole responsible party determining how building funds provided to Empire Builders were to be disbursed; i.e., who was to be paid and when. (Patel Dep. at 7, 21, 61, 79-81, 92.)

The landowner and developer of the Silverleaf project was Empire Limited Partnership. (Patel 3/2/07 Aff. ¶¶ 5, 14.) Patel was not a partner, officer, or director of this entity but his father was. (Patel Dep. at 28-29, 32; Patel 3/2/07 Aff. ¶ 4.) Empire Limited Partnership had a mortgage on the land and a line of credit through Huntington National Bank ("Huntington Bank"). The line of credit was used to finance the Silverleaf project. (Patel Dep. at 69-70; Patel 3/2/07 Aff. ¶ 5.)

Empire Builders, as the general contractor at the site, was responsible for contracting with and paying subcontractors. (Patel 3/2/07 Aff. ¶ 5; Patel Dep. at 61.) The process worked as follows. Subcontractors would invoice Empire Builders, who would, in turn, submit them to Empire Limited Partnership for payment. Empire Limited Partnership would then request funding from Huntington Bank to pay invoice amounts. Empire Limited Partnership would receive funds from the Bank and turn them over to Empire Builders. Empire Builders would then use the building funds to pay its subcontractors and other

3

operating expenses, including employee payroll, utilities, taxes, and payments to Patel as President of Empire Builders. (Patel 3/2/07 Aff. ¶¶ 5, 14, 19-21; Patel 7/9/07 Aff. ¶ 8.)

Huntington Bank subsequently imposed additional burdens on Empire Limited Partnership. In late 1998, Empire Limited Partnership refinanced the Silverleaf project with the sale of unrelated lots to National Lumber Company. (Patel 7/9/07 Aff. ¶ 10.) The sale to National Lumber and refinance did not move forward as expected, and the amounts owed to vendors increased. (*Id.* at ¶ 23.) Patel "revised the summary for the refinance, allowing for <u>certain</u> amounts due to vendors to be <u>'deferred'</u> and paid from Phase III and IV of the Silverleaf Development, as opposed to Phase II upon which the work had actually been completed." (*Id.* at ¶ 24 (emphasis added) and Ex. J to Aff., 11/2/98 letter.) On November 23, 1998, Empire Builders sent Shamrock (a Phase II debtor) a letter confirming its intent to pay $47,058 in outstanding debts out of Phase III and IV of the Silverleaf Development. (*Id.* at ¶ 26 and Ex. L to Aff., 11/23/98 letter.)

On November 24, 1998, the sale between Empire Limited Partnership and National Lumber was complete. (*Id.* at 28.) The sale proceeds were placed in escrow with Liberty Title Company and disbursed in December 1998. (*Id.* at ¶ 29.) Shamrock received $11,000 from this transaction. The remaining amounts owed to Shamrock were to be paid from Phase III and IV of the Silverleaf Development. (*Id.*) A December 8, 1998 letter from Huntington Bank stated that all payments to subcontractors would be made directly through Liberty Title Company. (*Id.* at ¶ 31 and Ex. P to Aff., 12/8/98 letter to "Sam" at Empire Limited Partnership.)

From December 1998 through August 1999, Shamrock continued to provide materials and labor to Empire Builders at the Silverleaf project. On August 11, 1999, Patel wrote to

4

Shamrock informing it that the money from Lot 44 that was being held in escrow by Liberty Title would soon be released and Shamrock "should be expecting the release of 'your' money from escrow ASAP." (Ex. Q to Patel 7/9/07 Aff., 8/11/99 Fax Letter; Patel 7/9/07 Aff. ¶ 32.) On October 6, 1999, Patel wrote to Shamrock regarding the escrowed funds for Lot 44. The parties agreed that in exchange for Shamrock's full conditional waiver for Lot 44 Silverleaf subdivision in the amount of $8,400.00, the balance owed of $7,048.00 would remain the continuing obligation of Empire Builders of Michigan, Inc. and Sameer B. Patel personally. (Patel 7/9/07 Aff. ¶ 33 and Ex. R to Aff., 10/6/99 letter agreement.)

Huntington Bank eventually pulled its line of credit. Empire Limited Partnership was then forced to sell the remaining undeveloped lots and to abandon the remaining phases of the project. (Patel 3/2/07 Aff. ¶ 6; Patel 7/9/07 Aff. ¶ 9-12.) It is not known if any of the proceeds from this sale went to Empire Builders. Shamrock was never paid all the sums owed it on the Silverleaf project, including the $7,048.00 Patel personally agreed to pay.

**B. Shamrock's State Court Action**

In 2000, Shamrock filed a lawsuit against Empire Builders and Sameer Patel in state court alleging claims for (1) breach of contract; (2) fraud/innocent misrepresentation; (3) account stated; (4) action on personal guarantee; and (5) fraudulent conveyance. On January 8, 2003, Shamrock obtained a default judgment against Empire Builders and Sameer Patel in the amount of $81,171.79; reflecting $73,529.00 in damages and $7,642.79 in interest. (Shamrock Ex. A, Civil Judgment, Washtenaw County Circuit Court Case No. 00-1036-CK.)

**C. Bankruptcy Proceedings**

On October 13, 2005, Patel filed for personal Chapter 7 bankruptcy and listed Shamrock's $81,171.79 state court judgment against Empire Builders and him personally as a debt to be discharged in bankruptcy. Shamrock then brought an adversary proceeding against Patel, filing a complaint to determine dischargeability of its debt. At issue here is Shamrock's allegation that Patel violated the Michigan Builders Trust Fund Act ("MBTFA") and thus the debt owed it was nondischargeable under 11 U.S.C. § 523(a)(4).

Patel brought a motion for summary judgment on that claim arguing that the debt was dischargeable. The Bankruptcy Court issued a bench ruling on May 23, 2007 granting Patel's motion. It held that (1) an individual officer of a corporation could not be considered a "contractor" within the meaning of the MBTFA; (2) to find Patel individually liable under the MBTFA, Shamrock must provide it with evidence supporting an alter ego or some other theory allowing it to disregard the corporate structure of Empire Builders; (3) Shamrock had not provided any such evidence; and (4) although it is possible to find an individual either criminally liable or civilly liable for causing a corporation to violate the MBTFA, that is not enough to find that a statutory trust relationship between Patel and Shamrock based on the MBTFA pre-existed any wrongdoing by Patel; and, therefore, the debt owed Shamrock does not qualify as a nondischargeable debt under § 523(a)(4). (5/23/07 Tr. at 40-47.) The Bankruptcy Court did, however, allow Shamrock to amend its complaint to add a claim alleging that Patel is not entitled to a discharge pursuant to 11 U.S.C. § 523(a)(2)(A). (5/24/07 Order; 5/23/07 Tr. at 47-52.)

Shamrock subsequently filed its First Amended Complaint with the § 523(a)(2)(A) claim, and Patel filed a motion for summary judgment. The Bankruptcy Court granted

Patel's motion in a bench ruling on August 22, 2007. It held that (1) because Shamrock had not presented any evidence that Patel made any material misrepresentations with knowledge that they were false or with gross recklessness as to their truth, Shamrock had not satisfied the requirements for nondischargeability of its debt under § 523(a)(2)(A); and (2) the doctrine of collateral estoppel could not be invoked to establish fraud and thus nondischargeability under § 523(a)(2)(A). (8/22/07 Tr. at 23-29.) It issued an Order granting Patel's motion, dismissing Shamrock's complaint, and closing the adversary proceeding on August 22, 2007.

Shamrock's timely appeal of the Bankruptcy Court's Orders granting Patel's motions for summary judgment is now before the Court.

IV. Analysis

A. Michigan Builders Trust Fund Act and 11 U.S.C. § 523(a)(4)

Shamrock's appeal requires this Court to interpret the MBTFA and its interplay with § 523(a)(4) of the Bankruptcy Code which provides that the debt of an individual debtor is not discharged if it was incurred by "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). *See also Kriegish v. Lipan (In re Kriegish)*, 275 B.R. 838, 844 (Bankr. E.D. Mich. 2002), *aff'd*, 97 Fed. Appx. 4 (6th Cir. Feb. 23. 2004). The Sixth Circuit has defined "defalcation" to include "the failure to properly account for" funds held in trust. *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005).

To "find a debt nondischargeable under § 523(a)(4) due to defalcation," there must be "proof by a preponderance of the evidence of the following: (1) a pre-existing fiduciary relationship, (2) breach of that fiduciary relationship, and (3) a resulting loss." *Id.* at 390.

To establish the required fiduciary relationship, the debtor must hold the funds in an express or technical trust, not a "constructive trust[] that courts may impose as an equitable remedy." *Id.* at 391. It is not disputed that a trust arising under the MBTFA is an express trust. The question presented here is whether an express trust is created under the MBTFA once an individual officer of a contractor receives building funds that are to be disbursed to subcontractors working on a construction project.

The Court begins with the Bankruptcy Court's interpretation of the MBTFA. This involves a conclusion of law and is thus reviewed *de novo*.

It is well-established in the federal and Michigan courts that the MBTFA "imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts." *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 742 N.W.2d 140, 143 (Mich. Ct. App.), *lv. denied*, 742 N.W.2d 363, 364 (Mich. 2007). The Act provides as follows:

> Sec. 1. In the building construction industry, the building contract <u>fund paid</u> by any person <u>to a</u> <u>contractor</u>, or by such person or contractor to a subcontractor, <u>shall be considered by this act to be a trust fund</u>, <u>for the benefit of</u> the person making the payment, contractors, laborers, <u>subcontractors</u> or materialmen, <u>and the contractor</u> or subcontractor <u>shall be considered the trustee of all funds so paid to him</u> for building construction purposes.
>
> Sec. 2. <u>Any contractor</u> or subcontractor engaged in the building construction business, <u>who, with intent to defraud, shall retain or use the proceeds or any part thereof, or any payment made to him, for any other purpose than to first pay</u> laborers, <u>subcontractors</u> and materialmen, <u>engaged by him to perform labor or furnish material</u> for the specific improvement, <u>shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid</u> . . . .
>
> Sec. 3. <u>The appropriation by a contractor</u>, or any subcontractor, <u>of any moneys paid to him for building operations before the payment by him of all moneys due</u>

8

or so to become due laborers, <u>subcontractors</u>, materialmen or others entitled to payment, <u>shall be evidence of intent to defraud</u>.

Mich. Comp. Laws §§ 570.151-.153 (emphasis added). Although the MBTFA is a penal statute, "the Michigan Supreme Court has long recognized a civil cause of action for violation of provisions of the act." *DiPonio Constr. Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 62 (Mich. Ct. App. 2001) (citing cases). The Act "was originally passed in 1931 as a depression-era measure to afford additional protection to subcontractors and materialmen." *Id.* at 63 (internal quotation and citation omitted). "The civil cause of action that exists under the [A]ct supplements those remedies provided by the mechanics' lien statute, M.C.L. § 570.185 *et seq.*" *Id.* at 63. The prima facie elements of a civil action brought pursuant to the MBTFA are:

> (1) the defendant is a contractor . . . engaged in the building construction industry, (2) a person paid the contractor . . . for labor or materials provided on the construction project, (3) the defendant retained <u>or used those funds, or any part of those funds</u>, (4) <u>for any purpose other than to first pay laborers, subcontractors, and materialmen</u>, (5) who were engaged by the defendant to perform labor or furnish material for the specific project.

*Id.* at 62 (emphasis added). The MBTFA is remedial in nature and is construed liberally. *Id.* at 63.

### 1. Personal as Opposed to Corporate Liability Under the MBTFA

It is also well-established that "[o]fficers of a corporation may be held individually liable when they personally cause their corporation to act unlawfully." *Livonia Bldg. Materials Co.*, 742 N.W.2d at 143-44. *See also Trustees of the Mich. Reg'l Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 373 (E.D. Mich. 2005). This is true whether the corporate employee or official "was acting on his own behalf or on behalf of the corporation." *Livonia Bldg. Materials Co.,* 742 N.W.2d at 144

9

(internal quotations and citations omitted). "[E]ven though [the individual] technically was not the 'contractor' for the [subject construction] project," he or she "*could* . . . be held responsible under the MBTFA as long as [he or] she personally caused the corporation to violate the statute." *People v. Brown*, 610 N.W.2d 234, 239 (Mich. Ct. App. 2000) (emphasis in original). Contrary to the Bankruptcy Court's decision in this matter, the Michigan courts have held that, because the MBTFA "directly provides for liability for corporate officers, . . . we have no need to consider independently the doctrine of 'piercing the corporate veil.'" *Allied Mech. Servs., Inc. v. DR & W Eng'g & Design, Inc.*, No. 266165, 2007 WL 866474 (Mich. Ct. App. March 22, 2007). Accordingly, the Bankruptcy Court erred when it concluded that Shamrock could not succeed on its § 523(a)(4) argument absent evidence supporting a theory allowing the Court to disregard the corporate structure of Empire Builders.

**2. Pre-existing Statutory Trust Under MBTFA**

In the context of a bankruptcy proceeding addressing the issue of nondischargeability under 11 U.S.C. § 523(a)(4), it has long been established that "[u]pon receiving funds for a construction project, the contractor (or subcontractor) becomes a trustee for the project, with the trust assets being distinct from the contractor's corporate assets for bankruptcy purposes." *In re Kriegish*, 25 B.R. at 844. The MBTFA is triggered by the payment of building funds to a contractor and a statutory trust is created at that moment. The contractor becomes a fiduciary with a duty to first pay subcontractors who have outstanding invoices for labor and materials. "The builder's obligation is that of a fiduciary duty to exercise proper and honest judgment." *Id.*

The MBTFA creates a trust and fiduciary duties for both the contractor and an individual corporate employee. Contrary to the Bankruptcy Court's decision, it is the payment of building funds to an individual officer of a contractor that triggers a fiduciary duty on the part of that individual to disburse the funds as mandated by the MBTFA. Michigan and bankruptcy courts interpreting and applying the MBTFA do not support the Bankruptcy Court's conclusion that the MBTFA trust springs into existence only upon the individual corporate officer's violation of that Act, making it a trust *ex maleficio*. That individual <u>liability</u> is created when a corporate officer or employee diverts those funds in a manner contrary to the mandates of the MBTFA confirms only that the individual had a pre-existing fiduciary duty under a pre-existing trust created under the MBTFA that has now been breached. The same is true for corporate liability under the MBTFA. The Bankruptcy Court erred when it concluded otherwise.

### 3. Who Has Burden of Proof Under the MBTFA and Was it Satisfied

The next issue presented on appeal is who has the burden of proof on Shamrock's claim that Patel violated the MBTFA. It is well-established that Patel has the burden of proof that no violation occurred. In *Cappella v. Little (In re Little)*, 163 B.R. 497, 500-01 (Bankr. E.D. Mich. 1994), the Bankruptcy Court examined Michigan law and concluded that "[s]ince trustees have a duty to account under Michigan law, it is only logical that the Debtor, a statutory trustee, must prove that no defalcation occurred -- i.e., that he be required to account for the trust funds he received." Thus, Shamrock was not required to "substantiate his allegation of defalcation with affirmative evidence that trust funds were misappropriated." *Id.* at 501.

The *Little* Court further observed that it "would reach the same conclusion under federal common law." *Id.* at 503. First, "requiring that the Debtor prove he is not guilty of defalcation has the virtue of being consistent with Michigan law and . . . assuring that a trustee cannot frustrate legitimate public policy" in Michigan "by filing bankruptcy." *Id.* Second, "it would likely be easier for the Debtor to prove that the funds were properly spent than for the Plaintiff to prove that they were not." *Id.* Third, "[s]uch an approach does not substantially undermine bankruptcy's 'fresh start' policy because the beneficiary must as a preliminary matter establish that the debtor did in fact receive funds in a fiduciary capacity." *Id.* "On balance, . . . it makes more sense to require a trustee to prove that trust funds were properly applied than to require a beneficiary to prove that they were misapplied." *Id. Accord, In re Kriegish*, 275 B.R. at 845 (observing that "the beneficiary need only prove the existence of a fiduciary relationship and then demand an accounting.")

Despite the Bankruptcy Court's finding to the contrary, Shamrock did produce evidence that Patel had received construction funds for disbursement to subcontractors and did so in a fiduciary capacity under the trust created by the MBTFA. Patel's deposition was submitted as an exhibit to Shamrock's response to Patel's motion for summary judgment. He testified that he was the sole individual in charge of day-to-day operations for Empire Builders at the Silverleaf construction project and was the sole responsible party determining how funds received were to be applied and who was to be paid. (Patel Dep. at 7, 21, 61, 79-81, 92.) Moreover, in his affidavit, Patel testified that, once Empire Builders received construction funds, he used them to pay its subcontractors and its other operating expenses on the Silverleaf project, including employee payroll, utilities, taxes, and payments to Patel for services rendered as President of Empire Builders. (Patel 3/2/07 Aff.

¶¶ 5, 14, 19-21.) Patel also testified that, after Huntington Bank pulled the line of credit funding construction at the Silverleaf project, the landowner and developer -- Empire Limited Partnership -- was forced to sell the remaining undeveloped lots and to abandon the remaining phases of the project. (Patel 3/2/07 Aff. ¶ 6; Patel 7/9/07 Aff. ¶¶ 9-12.) Patel, however, did not testify whether Empire Builders received any of the proceeds from this sale or whether it received any further construction funds that were then used to pay its operating expenses or subcontractors other than Shamrock.

The Bankruptcy Court erred when it found that Patel's affidavit was sufficient to satisfy his burden under the MBTFA. Patel's affidavit and accompanying exhibits are not the sort of "accounting" required under the MBTFA.[1] On the contrary, like the debtor in *In re Krieglish*, his "attempts at an accounting" are "woefully inadequate." 275 B.R. at 845. It is not enough that Patel presented evidence that he used building funds to either pay Empire Builders' general overhead expenses or to pay subcontractors. Contrary to arguments apparently accepted by the Bankruptcy Court, the plain language of the MBTFA requires that "[t]he holder of a construction trust fund <u>must</u> pay all laborers and subcontractors <u>before using the funds for its own purposes</u>, including payment of its own employees." *Id.* (emphasis added).

In sum, it is undisputed that Patel received building funds on the Silverleaf project and directed where those funds were to be applied and that Shamrock was not paid in full for labor and materials provided on that project. Under the MBTFA, Patel was required to pay

---

[1]Patel conceded at his deposition that his "business operations were sloppy at best at that point;" that he did not know if an overall accounting was ever done; and he did not know exactly how much was owed to Shamrock. (Patel Dep. at 79-81.)

13

Shamrock when building funds came in on the Silverleaf project, and "the appropriation of any monies paid to a contractor for building operations before payment of the protected party" -- here the subcontractor Shamrock -- "is evidence of the intent to defraud." *Livonia Bldg. Materials Co.*, 742 N.W.2d at 145 (quoting MBTFA, Mich. Comp. Laws § 570.153). Moreover, Patel did not provide the Bankruptcy Court with an accounting that would allow it to evaluate what building funds he received and whether he disbursed those funds to subcontractor Shamrock before paying himself, other employees, or miscellaneous overhead expenses. The Sixth Circuit has "broadly defined 'defalcation' to encompass . . . misappropriation by a fiduciary, as well as the failure to properly account for such funds." *In re Krieglish*, 97 Fed. Appx. at **5-6 (internal quotations and citation omitted). Thus, Patel's failure to provide a proper accounting amounts to a defalcation as defined in 11 U.S.C. § 523(a)(4). *In re Blaszak*, 397 F.3d at 390. Accordingly, the Bankruptcy Court erred when it granted Patel's motion for summary judgment on Shamrock's claim that its debt was not dischargeable under § 523(a)(4), and that decision is REVERSED.

**B. Shamrock's Claim of Nondischargeability under § 523(a)(2)(A)**

Shamrock's First Amended Complaint was the subject of Patel's second motion for summary judgment and the Bankruptcy Court's August 22, 2007 ruling. It alleged that Shamrock's debt was not dischargeable under § 523(a)(2)(A) of the Bankruptcy Code. The Bankruptcy Court granted Patel's motion for summary judgment on this claim, and this Court now considers Shamrock's appeal of that decision.

11 U.S.C. § 523(a)(2)(A) provides that:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

"[T]o except a debt under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness of the truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998).

The Bankruptcy Court concluded that Shamrock could not establish the first element in light of the uncontroverted averments in Patel's July 9, 2007 affidavit. It also rejected Shamrock's attempt to establish fraud or misrepresentation by invoking the doctrine of collateral estoppel, or issue preclusion, and arguing that the fraud issue had already been litigated and decided in its earlier state court complaint against Patel and Empire Builders that resulted in a default judgment in Shamrock's favor. This Court finds that the Bankruptcy Court did not err in granting Patel's motion for summary judgment on Shamrock's § 523(a)(2)(A) claim, and its decision is AFFIRMED.

"If a finding of fraud or misrepresentation was made in a prior proceeding, the doctrine of collateral estoppel can prevent a debtor from re-litigating the issue in the bankruptcy proceeding." *Wellinger v. Borton (In re Wellinger)*, 371 B.R. 249, 252 (Bankr. E.D. Mich. 2007). Under Michigan law, "[c]ollateral estoppel, or issue preclusion, precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was

actually and necessarily determined in the prior proceeding." *Ditmore v. Michalik*, 625 N.W.2d 462, 467 (Mich. Ct. App. 2001) (citing *People v. Gates*, 452 N.W.2d 627 (Mich. 1990)).

The collateral estoppel doctrine "applies only when the basis of the prior judgment can be clearly, definitely, and unequivocally ascertained." *Ditmore*, 625 N.W.2d at 467. This safeguard ensures that information is available to make a reasoned determination whether an issue was essential to the judgment and thus "necessarily determined." *Ninowksi Wood & McConnel Mfrs. Representatives, Inc. v. MNP Corp.*, No. 227850, 2002 WL 867133, *3 (Mich. Ct. App. April 26, 2002). *See Robinson v. Callender (In re Callender)*, 212 B.R. 276, 281 (Bankr. W.D. Mich. 1997) (observing that "[a]n issue is necessarily determined only if it is 'essential' to the judgment." (internal quotations and citation omitted)).

The Bankruptcy Court properly rejected Shamrock's attempt to invoke collateral estoppel. Because the state court default judgment did not clearly state that it was based on Shamrock's fraud/misrepresentation claims as opposed to its breach of contract or other non-fraud claims, Shamrock could not satisfy the "necessarily determined" requirement for precluding relitigation. Without clarification as to the basis of the default judgment, the Bankruptcy Court was correct to conclude that it could not determine whether Shamrock's fraud/misrepresentation claims were essential to that judgment. Accordingly, it properly granted Patel's motion for summary judgment.

**V.     Conclusion**

For the above-stated reasons, this Court REVERSES the Bankruptcy Court's May 24, 2007 Order granting Patel's motion for summary judgment on Shamrock's § 523(a)(4)

16

claim; and (2) AFFIRMS the Bankruptcy Court's August 22, 2007 Order granting Patel's motion for summary judgment on Shamrock's § 523(a)(2) claim.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: January 25, 2008

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 25, 2008, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager